## Simmons v. Commonwealth.

(Decided May 15, 1925.)

### Appeal from Bullitt Circuit Court.

1. Intoxicating Liquors—Evidence Held to Sustain Conviction of Unlawful Possession of Illicit Still.—Evidence held to sustain conviction of unlawful possession of illicit still, in violation of Rash-Gullion Act, section 4.

2. Searches and Seizures—Woodlands Located Some Distance from Residence could be Searched Without Warrant—"Houses"—"Possessions."—Woodlands located some distance from residence could be searched without warrant without violating either state (Constitution, section 10) or federal constitutional prohibition of unreasonable search and seizure; "houses" and "possessions" including land immediately adjacent to and used in connection with the residence.

3. Criminal Law—Admission of Testimony of Discovery of Lumber in Accused's Barn by Federal Agent Without Search Warrant, if Erroneous, Held Not Prejudicial.—In prosecution for unlawful possession of illicit still, mash tubs which were constructed of new lumber, admission of testimony of discovery of lumber in accused's barn by federal agent without search warrant, if erroneous, held not prejudicial in view of other evidence of accused's guilt.

4. Criminal Law—When and for what Purpose Proof of Other and Independent Crimes is Admissible Stated.—Proof of other and independent crimes, not too remote from one on trial, is admissible to establish identity, motive, knowledge, necessary criminal intent, or to show that the crime of which accused is charged is a part of a plan or system of criminal actions, or where the distinct crime is so intimately connected with the one on trial as to be a part of and inseparable from it.

5. Intoxicating Liquors—In Prosecution for Unlawful Possession of Illicit Still, Admission in Evidence of Finding of Kegs of Whiskey in Cedar Tops Held Not Error.—In prosecution for unlawful possession of illicit still, admission of evidence of finding of kegs of whiskey in cedar tops 300 yards from the still held not error in view of circumstances surrounding discovery of such whiskey.

6. Criminal Law—In Prosecution for Unlawful Possession of Illicit Still, Admission in Evidence of Finding of Whiskey in Cedar Tops Held Not Prejudicial.—In prosecution for unlawful possession of illicit still, admission in evidence of finding of kegs of whiskey in cedar tops 300 yards from still held not prejudicial in view of other convincing evidence of accused's guilt.

CHARLES CARROLL, C. P. BRADBURY and A. E. FUNK, JR., for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The grand jury of Bullitt county at the April, 1924, term of the court returned an indictment against appellant, S. B. Simmons, accusing him of unlawfully having in his possession an illicit still, an offense denounced by section 4 of chapter 33 of the Acts of 1922, commonly known as the Rash-Gullion Act. Upon his trial under his plea of not guilty, he was convicted and after a motion for a new trial was overruled, judgment was pronounced on the verdict, to reverse which he prosecutes this appeal, urging, through his counsel, that (1) the verdict is not sustained by the evidence and defendant's motion for a peremptory instruction to find him not guilty should

have been sustained, and (2) that the court erred in the admission of testimony offered by the Commonwealth.

The testimony for the Commonwealth proved without contradiction these facts: That defendant lives on a farm containing 213 acres, a portion of which is at or near the junction of Floyd's creek with Salt river and located some two and a half or three miles from Shepherdsville. The county judge was informed that a still was being operated on defendant's farm in a cedar woods near the junction of the above named streams, and its location was so definitely described to him that he could go to the spot without directions. One afternoon in April, 1924, he with a number of others selected by him drove out to defendant's farm and from the rear of it went to the described place and found the still, with all apparatus necessary for manufacturing liquor equipped and perfectly adjusted, the still being surrounded with brick and covered with an open shed. There were also vats, or tubs, to hold the mash until it became properly fermented. The furnace was warm and indicated that operations had been but recently suspended. On the way to the place the judge and his companions met defendant going in the opposite direction, but there was no conversation with him. The witnesses destroyed the still and other articles forming its complete outfit, and they observed that a road ran from it to plaintiff's house and barn, located about thirty yards distant from his house, and that it was freshly traveled with different kinds of vehicles and it ended at the still, which was, according to the witnesses for the Commonwealth, some 250 to 300 yards distant from defendant's residence and close to Salt river, where he had a fishing camp that he rented to those who desired to use it. Some whiskey was found at the still, and the next day a federal prohibition officer, who went to view the scene, discovered in the tops of cedar trees that had been cut for posts and at a distance of 300 yards from the still, five ten-gallon kegs of moonshine liquor. Just prior to that discovery he saw a wagon, driven by someone whom he did not recognize because of the distance, going in the direction of where the kegs of liquor were found and it was by following the tracks of the wagon that the discovery was made by him. Neither the county judge nor the federal officer had a search warrant. It was also proven by the prosecution that along in March or February prior to the discoveries

by the county judge, the defendant had purchased a quantity of bricks with which he desired to build a flue somewhere on his premises, and he also purchased a quantity of lumber of the same quality and description of that out of which the mash tub was constructed. He had also purchased some sheets of corrugated iron similar to those found at the still.

Defendant denied all knowledge of the operation of the still on his land, and said that his entire farm was rented upon certain terms to a tenant by the name of Peacock, and that he had turned over to his tenant practically its entire charge. He also testified that he had not been in the woods or thicket where the still was found since the fall before, when he was there hunting quail, and that he was greatly surprised when he learned of its discovery at the place on his farm and which he said was as much as a half mile from his house. He explained that for some cause he did not build the flue with the bricks he bought and that he stacked them by the side of his barn, and that he built a boat with a part of the lumber that he bought and the remainder of it was in his cistern house; but he did not prove the location of any of those materials by anyone except himself, or that he used a part of the lumber in building a boat. He also introduced witnesses to prove his good character in observing the prohibition statute, but one witness testified to his bad character in that respect, and every one of his witnesses testified to his bad moral character on cross-examination by the Commonwealth. It would, therefore, appear that the contention that the verdict was not sustained by the testimony, or that defendant's motion for a peremptory instruction in his favor should have prevailed are each of them wholly without merit, since it is conceded that conviction in criminal prosecutions may be supported by circumstantial evidence alone, and recent cases in this court are quite numerous where convictions, under similar prosecutions, have been upheld by us on circumstantial testimony much less persuasive than that found in this record.

But under ground (2) it is strenuously insisted that all of the incriminating testimony was incompetent because it was discovered without a search warrant. It will be remembered that the location of the still was in a woodland and, so far as this record shows, the land was unfenced; but whether it was or not fenced we held in the cases of Brent v. Commonwealth, 194 Ky. 504, and Cot-

ton v. Commonwealth, 200 Ky. 349, that the words "houses" and "possessions" as employed in section 10 of our Constitution include land immediately adjacent to and used in connection with the residence, but that neither both or either of them include woodlands located some distance from the residence, and that such woodlands could be searched without a warrant as not being protected by either our or the federal Constitution against unreasonable search and seizure without a search warrant. We adhere to the principle laid down in those opinions, from which it follows that the evidence of the Commonwealth in this case to prove the discovery and location of the still was competent and the court did not err in overruling defendant's objection thereto.

But it is urged that the discovery of the lumber in defendant's barn by the federal agent on the next day when he had no search warrant invaded the constitutional inhibition against the search and that the testimony concerning the lumber was incompetent. This insistence is perhaps true, but that piece of testimony was infinitesimal as compared with the great bulk of the competently proven incriminating circumstances; besides, defendant admitted purchasing the lumber, and the witness who sold it to him described it and which fits the description of the lumber of which the mash tub was constructed. So that, if the federal agent's testimony upon the point under consideration should be excluded, it could have no material effect upon the verdict of the jury.

The last contention is that it was error to prove the finding of the kegs of whiskey in the cedar tops, since that was proof of a separate and independent offense and was not admissible on the trial of the accusation contained in the indictment, but we are not inclined to agree with that contention. It is the settled doctrine in this jurisdiction that proof of other and independent crimes, not too remote from the one on trial, may be admitted to prove identity, motive, knowledge, necessary criminal intent, "or to show that the crime of which he is being tried is a part of a plan or system of criminal actions," or where the distinct crime is so intimately connected with the one on trial as to be a part of it and inseparable from it. Kirby v. Commonwealth, 206 Ky. 535, and cases therein referred to. The discovered whiskey was necessarily the product of a still. One had been found the day before located but a short distance from where it was discov-

ered, and immediately prior to the discovery a wagon was seen going in the direction of the places where the discovery was made with fresh wagon tracks in the road nearby. Certainly it would be competent evidence upon the charge of unlawfully possessing liquor, and we think it is relevant upon the charge of possessing the machinery and apparatus with which it was evidently manufactured. If, however, it were otherwise, then it is difficult for us to detect how it could prejudice the rights of defendant upon the charge preferred in the indictment, since the evidence directed to its proof was undenied and most convincing of the defendant's guilt.

We, therefore, conclude after a careful survey of the entire record that no error was committed at the trial prejudicial to defendant's substantial rights, and the judgment is affirmed.